# EXHIBIT A



## 18.    DISPUTE RESOLUTION

**18.1    General.**  Any dispute arising out of or relating to this Agreement shall be resolved in accordance with the procedures specified in this Article 18, which shall be the sole and exclusive procedures for the resolution of any such disputes.

**18.2    Escalation**.  The Parties will attempt in good faith to resolve any claim or controversy arising out of or relating to the execution, interpretation and performance of this Agreement (including the validity, scope and enforceability of this mediation and arbitration provision) promptly by negotiations between executives of each Party who have authority to settle the controversy and who are at a higher level of management than the persons with direct responsibility for the administration of this Agreement. Any Party may give the other Party written notice of any dispute not resolved in the normal course of business. Within fifteen (15) days after delivery of the notice, the receiving Party shall submit to the other a written response. The notice and the response shall include (a) a statement of each Party's position and a summary of arguments supporting that position, and (b) the name and title of the executive who will represent that Party and of any other person who will accompany the executive. Within thirty (30) days after delivery of the notifying Party's notice, the executives of both Parties shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one Party to the other will be honored. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. All applicable limitation periods and defenses based upon the passage of time shall be automatically tolled while the negotiations pursuant to this section are pending.

**18.3    Arbitration**.

**18.3.1    General Arbitration**.

**(a)**    Except as controlled by Section 18.3.2, any matter submitted to arbitration pursuant to any provision contained in this Agreement or any dispute arising out of or relating to this Agreement or its breach, termination or validity, including whether the claims asserted are arbitrable, which has not been resolved by the specified binding procedure pursuant to Section 18.2 within sixty (60) days of the initiation of the date of delivery of notice shall be settled by binding arbitration under the Rules of Arbitration of the International Chamber of Commerce ("**ICC Rules**"), except as modified in this Agreement, in effect on the date of this Agreement, by three independent and impartial arbitrators, one of whom shall be appointed by each Party and the third by the two appointees. The arbitration and this arbitration clause shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and judgment

**Confidential**
*Execution Version*

upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of the arbitration shall be New York, New York or Los Angeles, California and shall be determined by the Party that initiated the arbitration. The arbitrators may award attorneys' fees in their discretion. Otherwise, the arbitrators are not empowered to award damages in excess of compensatory damages, and each Party hereby irrevocably waives any right to recover such damages.

**(b)**   The Parties may request limited discovery in accordance with the IBA Rules on the Taking Evidence in International Arbitration. In addition, the Parties hereby confirm that (i) the arbitrators shall have the power to compel the production of documents at their discretion, (ii) in principle, discovery shall be limited to the minimum necessary scope to allow the Parties a reasonable opportunity to present their cases and fairly establish the facts of the dispute, and (iii) any request for production of documents made by a Party shall be sufficiently detailed in its description of the requested document and accompanied by a statement explaining how such document is relevant to the dispute and why the requesting party believes the requested document is in the possession of the other Party. The statute of limitations of the State of New York shall apply with respect to any notification of a dispute under this Agreement and shall be extended until commencement of arbitration if all interim deadlines have been complied with by the notifying Party.

**18.3.2   Expert Determination**.  If the Parties, through the JSC or otherwise, are unable to agree on Minimum Sales Requirements, forecasts, the pricing and applicable discount ranges for the Products and a material safety risk, either Party may submit such dispute to binding Expert Determination for resolution in accordance with the following provisions:

**(a)**   The submitting Party shall notify the other Party of its decision to initiate the Expert Determination proceeding pursuant to this Section 18.3.2 through written notice.

**(b)**   Within ten (10) days following receipt of such notice, the Parties shall use Commercially Reasonable Efforts to agree on an independent third party expert with at least ten (10) years of experience in the marketing, sales and distribution of pharmaceutical compounds or products. If the Parties cannot agree on such expert within such time period, each Party shall nominate one independent expert within such ten (10)-day period, and the two experts so selected shall nominate the presiding expert (the "**Presiding Expert**") within ten (10) calendar days of their nomination. No person nominated by a Party or appointed by the experts shall be entitled to act as the Presiding Expert unless such person has at least ten (10) years of experience in the marketing, sales and distribution of pharmaceutical compounds or products. Any person appointed or selected as the Presiding Expert in accordance with the above provisions shall be entitled to act as such expert provided that before accepting such appointment, the proposed Presiding Expert shall have fully disclosed in writing any interest or duty which conflicts or may conflict with the function under the appointment and/or may prejudice an opinion. No person shall, without the prior written agreement of both Parties, be appointed as expert who is, or has been, an employee of either Party or either Party's Affiliate or who is, or has been, a consultant to or contractor of either Party or either Party's Affiliate or who holds any financial interest in either Party or either Party's Affiliate. No person shall be appointed as a Presiding Expert who has not agreed to hold in confidence any and all information furnished by the Parties in connection with the dispute and the existence of the dispute and the outcome thereof.

35

**Confidential**
*Execution Version*

      **(c)**   Within ten (10) days of its appointment, the Presiding Expert shall set a date for the hearing, which date shall be no more than thirty (30) days after the date the Presiding Expert has accepted the appointment.

      **(d)**   The Expert Determination shall be in an accelerated form; accordingly, at least fourteen (14) calendar days prior to the hearing, each Party shall provide the Presiding Expert with a proposed resolution, along with supporting documentation (each, a "**Proposed Resolution**") to the issue in question. Such Proposed Resolution may be no more than thirty (30) pages, single spaced, single-sided (inclusive of any graphs or exhibits, and secondary materials), and must clearly provide and identify the Party's position with respect to the disputed matter(s) ("**Position**");

      **(e)**   After receiving both Parties' Proposed Resolutions, the Presiding Expert will distribute each Party's Proposed Resolution to the other Party. Seven (7) calendar days in advance of the hearing (described in clause (f) below), the Parties shall submit to the Presiding Expert and exchange response briefs of no more than ten (10) pages, with the same rules applied as to the Proposed Resolution. The Parties' Proposed Resolution and responsive briefs may also include or attach demonstratives and/or expert opinion based on the permitted documentary evidence, subject to the page limits. Neither Party may have any other communications (either written or oral) with the Presiding Expert other than for the sole purpose of engaging the Presiding Expert or as expressly permitted in this Section 18.3.2;

      **(f)**   The hearing shall consist of a one (1) day hearing of no longer than eight (8) hours, such time to be split equally between the Parties, in the form of presentations by counsel and/or employees and officers of the Parties. No live witnesses shall be permitted except expert witnesses whose opinions were provided with the Parties' briefs. The Presiding Expert shall determine whether to hold the meeting in person, in which case it will be held in New York, New York, or by video or teleconference;

      **(g)**   No later than ten (10) calendar days following the hearing, the Presiding Expert shall issue his or her written decision. The Presiding Expert shall take into due consideration each Party's Position and changes in the market environment of the Product but shall be under no obligation to select one Party's Proposed Resolution as his or her decision. The Presiding Expert's decision shall be final and binding on the Parties and the written decision by the Presiding Expert shall constitute a binding agreement between the Parties that may be enforced in accordance with its terms. Each Party shall bear its own costs and expenses in connection with such Expert Determination, and shall share equally the experts' fees and expenses;

      **(h)**   The violation of one of the time limits prescribed in this Section 18.3.2 by the expert shall not affect the expert's competence to decide on the subject matter, and shall not affect the final and binding decision rendered by the expert, unless otherwise agreed by the Parties; and

      **(i)**   The above Expert Determination shall be the exclusive and binding remedy of either Party if the Parties cannot agree on those matters designated in this Agreement as being subject to Expert Determination, with the exception of Section 12.5 regarding material safety risk.

**Confidential**
*Execution Version*

**18.3.3   Injunctive Relief.**   Nothing contained in this Article 18 shall prevent either Party from resorting to judicial process if injunctive or other equitable relief from a court is necessary to prevent serious and irreparable injury to one Party or to others. The use of arbitration procedures will not be construed under the doctrine of laches, waiver or estoppel to affect adversely either Party's right to assert any claim or defense.

## 19.   PUBLICITY AND DISCLOSURES

**19.1**   On or after the Effective Date of this Agreement, the Parties shall issue a press release substantially in a form to be agreed upon by the Parties. Thereafter, Distributor and Capricor may each disclose to third parties the information contained in such press release without the need for further approval by the other Party, provided that such information is still accurate. Any subsequent press release will contain the same accuracy and truthfulness as the original press release. No other press releases or public disclosures of the transaction contemplated by this Agreement may be made that discloses additional information about such transactions without the mutual consent of the other Party or to the extent required by applicable law, rule or regulation (including stock exchange requirements). To the extent that a release of information is required by applicable law, rule or regulation (including stock exchange requirements), the disclosing Party will use Commercially Reasonable Efforts to ensure that the content is accurate and in accordance with reasonable business standards and will, to the extent practicable, provide the other Party with advance notice of the proposed disclosure and an opportunity to review and comment upon such disclosure. A copy of this Agreement may be filed with the Securities and Exchange Commission, The New York Stock Exchange, the NASDAQ Market and/or the Tokyo Stock Exchange as required by applicable Regulations. In connection with such filing, the Parties will endeavor to obtain confidential treatment of economic and trade secret information. For clarification, subject to the foregoing provision in this Section 19.1, Distributor may cause NS Pharma to issue a press release in relation to this Agreement.

**19.2**   The restrictions contained in Section 19.1 will not apply to any disclosures to any prospective investor, acquirer, financing source, analyst, consultant, agent, representative, successor or finder, or any licensee of Capricor, or any other third party with whom Capricor is considering entering into a commercial relationship including but not limited to business alliance or M&A provided that Capricor takes reasonable precautions to maintain confidentiality prior to disclosure. Capricor will have taken reasonable precautions for purpose of this Agreement if it obtains a written confidentiality agreement with the intended recipient containing confidentiality provisions substantially similar to those contained in Article 13 of this Agreement. Capricor shall indemnify and hold harmless the Distributor for any subsequent breach of such confidentiality agreement by such recipient. Any information that is now, or hereafter becomes generally known or available to the public will be excluded from the prohibitions of this Article 19. In addition to the foregoing, Capricor shall have the right to use without further consent, the names or marks of Distributor on Capricor's website, corporate presentations, and in media segments, provided that Capricor shall not change or modify such names, marks, or logos of Distributor.

37